Steven W. Shaw, Esq. (11143)
Post Office Box 54840
Provo, Utah 84605
Tel 702-292-1624
steve@shawlaw.biz

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Darrell L. Deem, et al., | Case No. 2:15-CV-755-DS |
| Plaintiffs,<br><br>v.<br><br>Tracey Baron, et al., | **PLAINTIFF'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION** |
| Defendants. | Before the Honorable David Sam |

## TABLE OF CONTENTS

I.  STATEMENT OF PRECISE RELIEF SOUGHT AND GROUNDS FOR RELIEF. . . . . . . . 3

II.  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  STATEMENT OF ISSUES AND FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  STATEMENT OF UNDISPUTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V.  STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  Plaintiff's Are Likely to Succeed on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B.  Plaintiff's Are Likely to Suffer Irreparable Harm If Defendants Sell or Lose Their
    Assets Pending Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.  Plaintiff's Are Likely to Suffer Irreparable Harm If Defendants Waist or Destroy Their Assets Pending Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.  Plaintiff's Are Likely to Suffer Irreparable Harm If Defendants Continue to Hide Rents Pending Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

E.  Plaintiff's Are Likely to Suffer Irreparable Harm If the Engineering Work of 3J Consulting Is Not Made Available to Plaintiffs in Order to Complete the Project. . . . . . 18

F.  The Equities Balance in Favor of Plaintiffs Because Defendants Are Not Harmed by Maintaining the Status Quo and it Would Be a Travesty to Permit Defendants to Waist, Destroy or Throw Away These Assets.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

G.  The Public Will Benefit from Allowing Plaintiffs to Avoid the Failures They Wish to Avoid Through this Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

*Brennan v. Barnes*, 232 N.Y.S. 112 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bronx County Trust v. O'Connor*, 220 A.D. 340, 221 N.Y.S. 414 (1927). . . . . . . . . . . . . . . . 19

*cf. FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981).. . . . . . . . . . . . . . . . . . . . . . . . 21

*Hagemann v. Worth*, 56 Wn. App. 85, 782 P.2d 1072 (Div. III 1989). . . . . . . . . . . . . . . . . . . 14

*Ma v. Lien*, 198 A.D.2d 186, 604 N.Y.S.2d 84 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rolnick v. Rolnick*, 230 N.Y.S.2d 789 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Societe Anonyme v. Pierre A. Feller*, 112 A.D.2d 837,492 N.Y.S.2d 756 (1985).. . . . . . . . . . . 19

*Tyler Pipe Indus. V. Dep't. of Revenue*, 96 Wn.2d 785, 638 P.2d 1213 (1982). . . . . . . . . . . . . 14

*United States v. Ingersoll-Rand*, supra, 218 F.Supp. 530 (W.D. Pa. 1963).. . . . . . . . . . . . . . . . 21

*United States v. Original Knights of Ku Klux Klan*, 250 F.Supp. 330 (E.D. La. 1965). . . . . . . . 20

*United States v. Pennzoil*, 252 F.Supp. 962 (W.D. Pa. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365 (2008). . . . . . . . . . . 11

Federal Rule of Civil Procedure 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.

## **STATEMENT OF PRECISE RELIEF SOUGHT AND GROUNDS FOR RELIEF**

Plaintiff's seek an order reflecting the following points:

1.  The status quo is preserved with respect to major assets in that Defendants are enjoined from transferring real estate or other major assets without either the agreement of counsel or leave of court and that Plaintiff's are notified immediately of any potential involuntary transfer of real estate or other major assets, and that Plaintiffs be given leave to communicate with the proper parties and take appropriate steps to avoid the involuntary transfer of such assets.

2.  The status quo is preserved with respect to waist of major assets in that Defendants are enjoined from committing waist or otherwise substantially altering real estate or other major assets without either the agreement of counsel or leave of court.

3.  That the assignment of rents in the possession of Plaintiffs with reference to real estate be permitted to be enforced without interference from Defendants, or, in the alternative, that all rents be paid into court or into an interest bearing account of a neutral party pending further order of the court.

4.  That Plaintiff's be given access to the files, documents, surveys and all work performed or in the process of being performed or in the possession of the engineering firm of 3J Consulting relative to the 18901 Venture (Hill Top Project) and that Plaintiff's be allowed to use all existing

documentation to perform any work needed to accomplish the goals of said project.

II.

## BACKGROUND

Plaintiff's filed their Diversity Jurisdiction Complaint on October 26, 2015. This Complaint was amended before service on November 17, 2015. The time for filing an Answer was extended by stipulation in exchange for an agreement that this motion could be filed at this time.

In 2009 Plaintiff David Law (herein David) began working with Defendant Tracey Baron (herein Tracey). Over the next three years they helped struggling homeowners through short sales and closed a few dozen real property files together. In 2012 Tracey moved away from negotiating short sales for a fee and started buying single family homes from Bankruptcy Trustees subject to underlying liens and mortgages. Tracey and his companies partnered with Marc Dann (Ex-Attorney General from Ohio) and Jeffery Long (attorney from Lake Oswego, Oregon) to buy properties in Ohio, Illinois and Oregon from Bankruptcy Trustees. The model was to acquire the property, rent it out while negotiating with the lenders for a short payoff. They believed that due to improper mortgage assignments, lost documents and other legal mistakes by the lenders that litigating for short payoffs would be very possible and lucrative.

Late in 2012 Tracey requested his first loans from David. Tracey proposed principle loans from $7-11,000 per property with no more than an 8 month payback on principle. Once the principle was paid back then he was to pay out 20% of the rents for as long as rents were collected and then 30% of any profits if the settlement was achieved and the property was sold to an end buyer. No mortgage payments or property taxes were being paid on any of the properties. All of the rental

revenue was to be used to pay off the small principle loan and cover legal expenses, property management and minor repairs.  See Affidavit of David Law (Exhibit 1AAA), p. 6 (Hyperlink).

In time, the number of projects grew, Plaintiff Darrel Deem joined with David in providing financial backing, and the future looked promising.  Plaintiffs grew to trust Tracey so when he said that he needed more time to make payments Plaintiffs were inclined to grant his requests.  It took time for Plaintiffs to realize that something was amiss.  When Tracey's lack of payments grew from weeks into months, and his explanations became increasingly vague and eventually belligerent, it finally sunk in that their investment was in jeopardy.  Tracey had gradually become abusive and threatening in his communications.

The proverbial nail in the coffin came in late 2015 when they were attempting to close on a particular piece of real estate (which is not a part of this litigation) and settle on the 30% of profits which Tracey had promised.  Tracey sent David his accounting on the property which included thousands of dollars in totally unrelated expenses.  When Plaintiffs asked for clarification and verification of the expenses, rather than produce documentation, Tracey responded with name calling, abusive language and very serious threats and demanded that they speak with his attorney. See Exhibit 7C Oxbow Settlement Dispute, attached to the Affidavit of David Law (Exhibit 1AAA) (Hyperlinik).

The breaches of Defendants are numerous and are outlines in the Affidavit of David Law (Exhibit 1AAA).  For example, one of the contracts which is the subject of this action is a Joint Venture Agreement relating to the subdivision and development of a property known as 18901 Hill Top Road.  The Joint Venture Agreement clearly states that "No liens may be placed on the property

by any Party without all Parties expressly agreeing thereto.   Any Party who violates this subparagraph hereby expressly releases their profits and/or interest in the subject property in favor of the remaining Parties".   Despite this clear prohibition against filing liens, on January 20, 2016 Tracey filed lien for $169,000.00 against the property which is in direct violation to the terms of the joint venture agreement.   Specifically, Tracey filed an"Oregon Claim of Construction Lien"against the property as well as a"Notice of Filing Claim of Lien and Notice of Intent to Foreclose."   So, Tracey is now planning to foreclose Plaintiffs out of the property.   See Affidavit of David Law (Exhibit 1AAA), p. 26 (Hyperlink).

Not only does Tracey's lien violate the Joint Venture Agreement, but even if it did not violate the Agreement, it is questionable whether the lien is valid.   Plaintiffs did not hire Tracey or his company to do any construction work to the property and Tracey did not have authorization to do so unilaterally.   Moreover, Tracey has never provided receipts to support a lien amount and has never made any demand for payment.   Some of the amounts might be legitimate but if they are, they should be counted as money which Tracey personally invested to protect his share of the profits.   In that event, however, there are likely set-offs which would prevent his recovery.

Plaintiffs began privately investigating the properties and dealings of Tracey and learned that he has a long pattern of taking advantage of others and using threats and legal maneuvering to deny them the benefit of their bargain.   As this litigation has progressed, Plaintiffs have found that Tracey lied concerning rentability of at least one property: 9999 NE Worden Hill Road, Dundee, OR 97115. He rented the property and kept all of the income while telling Plaintiffs that the property was unrentable.   See Exhibit 9A Deception and Fraud, attached to the Affidavit of David Law (Exhibit

1AAA) (Hyperlink).

All of the loans contained an "Assignment of Rents" provision.  When Plaintiffs asserted their assignment of rents Tracey threatened the tenants with eviction if they sent any of their rents to Plaintiffs.  Plaintiffs learned that Tracey's partner, Jeff Long, has actually brought an action against Tracey for misconduct.  Tracey threatened to damage the properties relating to the Plaintiff's investments and sell them or simply let the bank have them.  See Email from Tracey to Plaintiffs of January 16, 2016. Exhibit 4A, pp. 1-3 (Hyperlink).  For example, on October 15, 2015, at 3:56 p.m. Tracey left the following voice message for David.

> ... I'm going to call you every 10 minutes until you pick up but a I'm not signing, fuck it, and umm we're going to duke it out ... I'm going to sue you for fucking all this shit ... and I'm going to tie this up until Darrell's dead and until you run out of fuckin money.  And if I lose there, I'm going to sell all these fucking properties that you have these 29 that are left.  And I'm going to let them go and I'm going to sell them to some fuckin hillbilly for fuckin $10.00...
> Exhibit 10A to Affidavit of David Law (Exhibit 1AAA), p. 4 (Hyperlink).  Voice message of October 15, 2015

Tracey has carried through on some of these threats in that he has ripped out the vegetation and landscaping around one of the properties, he has not defended properties allowing them to go back to banks and he has refused to pay the Engineer his fee to complete work for a small subdivision, and refused to allow Plaintiffs to do so, knowing full well that tens of thousands of dollars in work will be wasted if the work is not completed soon because licenses and/or permits will expire.  With respect to this subdivision, it is our understanding that the deadline with the City of Lake Oswego is April 7, 2016.  It is not realistic to think that the work can be complete by then even if the court order Tracey to cooperate in that effort but there may be some portion of the work that

can be salvaged and utilized in the completion of the work.  See Affidavit of David Law (Exhibit

1AAA), p. 12 (Hyperlink) and Exhibit 8D Refusal to allow Law and Deem to use engineering per

JV agreement, attached to the Affidavit of David Law (Exhibit 1AAA) (Hyperlink).

 Note that many of Tracey's threats center around his claim that Plaintiff's mishandled their

self directed IRAs.  See Exhibit 7D Legal Communications about SDIRA, attached to the Affidavit

of David Law (Exhibit 1AAA) (Hyperlink).  Tracey tried to blackmail Plaintiffs into accepting his

terms by threatening to report them to IRS and take other steps which he claimed would adversely

impact Plaintiffs.  This is a prominent theme in his emails.  Tracey's strategy worked for a brief

period, before Plaintiffs were certain that his threats had no merit, in that Plaintiffs waived their 30%

profit share from the closing on the Oxbow property.  Exhibit 7C Oxbow Settlement Dispute, to the

Affidavit of David Law (Exhibit 1AAA), pp. 1- 17 (Hyperlink).

 This is not a case about blackmail, but that is such an inflammatory term, Plaintiffs feel that

it deserves some evidentiary support.  Examples of his blackmail are found in the following excerpts

from Tracey's voice messages and emails.  Tracey explains to Plaintiffs that they cannot question

or try to persuade Tracey to back off from the inappropriate and unrelated expenses he is charging

them.  Tracey explains that if they do so he will put them in jail.

> And then when I am done with the Self Directed IRA custodian **I am gonna send the package I have assembled with all of your emails, docs and agreements to the IRS** and file a complaint there about how these investors in my company's with their self directed IRAs are challenging my expenses and salaries and ask for a ruling on why you aren't a prohibited person? Or ask if there is a distinction between individual properties within the same company or me since I own them all.
> **Or you can agree to take the real estate and my improvements and go away**.
> Exhibit 10A to Affidavit of David Law (Exhibit 1AAA), p. 5 (Hyperlink).  Voice message from Tracey on October 15, 2015 at 5:21 p.m.

\*   \*   \*   \*   \*

How are you going to be able to explain the expenditure real numbers that you changed that resulted in your IRA being over funded - you could go to jail over stuff like this - my actual numbers are booked on my tax returns. If you change these you are showing the intent to commit **tax fraud** and when you effect other people like my family these changes can become **criminal**. I know you don't like my numbers but it could be **criminal** in nature if the result is over a certain dollar amount. You just cannot change the numbers ever because if it causes you to put more money into your tax shelter - you can never make those decisions- all you can do it fire me if you don't like my numbers. Go to Just Answer and you will see I am right. Never ever ever ever can you change the expenses or do anything in your IRA that causes you to funnel more money into it. There could be a correlation between this and the delays. This is **intentional and illegal and criminal tax fraud** David. Do you understand - for both you and Darrell. Looks worse for you because you did all of the talking. I just need you to understand David your remedy for you not liking my numbers is never hiring me again -

**If you fight this it will be worse** because it's your Ira benefiting - this is a transaction that **you will be arrested** for if discovered. Ask your CPA or Attorney - we are analyzing every angle here - **I could call the police now** if I came forward - **and you would be picked up**. That could be what the hold up is David - do you see how deep this is - you are not the owner of the property Michelle and I are - not you - so what makes you think that you can change my expenses??
Exhibit 7C to the Affidavit of David Law (Exhibit 1AAA), p. 10 ([Hyperlink](#)).  Email from Tracey to David and Janine Law, October 24, 2015.  (Emphasis added.)

\*   \*   \*   \*   \*

Remember this, with what you have done with me since we met, **if I turned it over it would be enough to bring you down to cause an investigation**. **I tell you this to scare you so you stop. Somebody could arrange a deal for whistle blowing**.
Exhibit 12, Email of October 17, 2015, from Tracey Baron to David Law. (Emphasis added.) ([Hyperlink](#))

If Tracey is allowed to carry through on his threats, he will bleed out the assets and lay waste to every investment that the parties have made.  While doing so would cause injury to himself as well as to Plaintiffs, his rhetoric is so strong and his actions to date so irrational that Plaintiffs are

legitimately concerned that he might just do it.  Hence, they bring this motion to preserve the status

quo and prevent this waste until the matter may be adjudicated.  This motion causes no harm to

Tracey.  Rather, it helps Tracey financially.  It merely prevents the vindictive wasteful rampage

which he has promised.  See Exhibit 10A to the Affidavit of David Law (Exhibit 1AAA), pp. 1 - 22

(Hyperlink).

III.

<u>**STATEMENT OF ISSUES AND FACTS**</u>

A.  Do Plaintiff's have a Likelihood of success on the merits?

B.  Are Plaintiff's likely to suffer Irreparable Harm if relief is denied?

    1.  Order requiring court approval for the sale or transfer of assets.

    2.  Order against waist.

    3.  Order for rents to be paid into court.

    4.  Order to avoid waist of 3J Engineering work.

C.  Do the balance of equities tip in favor of the Plaintiffs?

D.  Would an injunction serve the public interest?

IV.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

    At this point it is hard to know if there are any facts which are undisputed.  Plaintiffs hope

that there are.   Among these might be the following:

A.  Valid loans and contracts were made by Plaintiffs to Defendants.

B.  Said loans were investments relating to real property, not because they were secured by real

property, but because the return on those investments was directly related to such real property.

V.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65 governs motions for TROs and preliminary injunctions. Because complex and varying circumstances often arise, trial courts are given broad discretion over granting or denying preliminary relief. The standards for both TROs and preliminary injunctions are formulated by case law rather than by rule or statute; the standards have sometimes been formulated differently in different circuits. However, the Supreme Court's recent decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S.Ct. 365 (2008) (Hyperlink) established a more exacting standard and limited to some degree a sliding scale approach. To obtain a preliminary injunction, the plaintiff must establish that it is: (1) likely to succeed on the merits; (2) likely to suffer irreparable injury if preliminary relief is denied; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction would serve the public interest.

VI.

## **ARGUMENT**

### A.  PLAINTIFF'S ARE LIKELY TO SUCCEED ON THE MERITS

This case is simple in the sense that it is about whether Plaintiff's have been paid as agreed. This should be primarily a simple mathematical analysis.  It is complicated primarily due to the fact that there are over 50 contracts to analyze.  Each contract has its' own principle, interest and rental income calculation.  Plaintiffs have done their best to present the mathematical analysis here for the court to examine.  See Exhibits 1B (Hyperlink), 1C (Hyperlink), 6B (Hyperlink) and 6C (Hyperlink)

to the Affidavit of David Law (Exhibit 1AAA).  These Exhibits are lengthy, but that cannot be avoided given our burden: demonstrating our likelihood of success on the merits.  The facts have been laid out in as clear and as plain a manner as possible.  There are tables showing payments and explanations of the tables in the Affidavit of David Law (Exhibit 1AAA), and copies of the raw data which are the source materials for the tables.  Since discovery has not yet begun, Plaintiffs do not have all of the documents so we may need to adjust our calculations when those documents are received.  The documents which we do have, however, show a clear picture of default by Defendants on all loans.  There are hundreds of thousands of dollars that are at risk and unpaid.  This will not be a fight over whether Plaintiffs will prevail.  It will be a fight over how much is due to Plaintiffs.  Hence, the court is asked to look closely at Defendant's evidence on payments, because whatever evidence Defendant's provide, they will not provide evidence that the payments have been made.  They have not been made.  **Therein lies the proof of Plaintiff's likelihood of success on the merits: the payments have not been made**.

## B. PLAINTIFF'S ARE LIKELY TO SUFFER IRREPARABLE HARM IF DEFENDANTS SELL OR LOSE THEIR ASSETS PENDING TRIAL.

The money loaned to Defendants was lent so that Defendants could purchase distressed properties.  In general terms, the money was to be used to acquire real property and make those properties rentable and profitable.  Thus, it is the Plaintiffs money, or the results therefrom which form the wealth of Defendants.  It is only just and fair, that this wealth should not be allowed to evaporate pending trial.  Which is exactly what Defendant Tracey Baron has threatened to do on many occasions.  See Exhibit 4A (Hyperlink) and 10A (Hyperlink) to the Affidavit of David Law

(Exhibit 1AAA).  Moreover, since these are distressed properties to begin with, they will likely be

lost to the banks unless the banks are kept in the loop and kept appraised of the efforts being made

to complete the arrangements agreed upon.

      To give the court a small sense of why his threats are taken so seriously by Plaintiffs, we

offer a few quotes from the record.

> **I am letting all the properties go.**  In the last few months, Dundee, Shore, Corona
> gone AND as we go forward — **All of them will go to sale**. > You know when you
> told me that you didn't care if you lost your IRA Darell?  **WELL I DON'T MIND
> IF I LOSE ALL OF THE PROPERTIES WE HAD TOGETHER**.  You will be
> getting my responses any day.
> Exhibit 13, Email from Tracey Baron to David Law, Darrell Deem, and Janine Law,
> January 16, 2016. (Emphasis added.) (Hyperlink)

*   *   *   *   *

> It's over - I can sign or not sign on Oxbow I don't fucking care - it's way cheaper for
> me to sue you fuckers and include APS - I'll drag it out for five years.  I have a 100
> other properties and we are doing something completely different than the 29 left.
> Exhibit 10A to Affidavit of David Law (Exhibit 1AAA), p. 5 (Hyperlink).  Voice
> message from Tracey on October 15, 2015.

*   *   *   *   *

> ... I'm going to call you every 10 minutes until you pick up but a I'm not signing,
> fuck it, and umm we're going to duke it out ... I'm going to sue you for fucking all
> this shit ... and I'm going to tie this up until Darrell's dead and until you run out of
> fuckin money.  And if I lose there**, I'm going to sell all these fucking properties
> that you have these 29 that are left.  And I'm going to let them go and I'm going
> to sell them to some fuckin hillbilly for fuckin $10.00**...
> Exhibit 10A to Affidavit of David Law (Exhibit 1AAA), p. 4 (Hyperlink).  Voice
> message of October 15, 2015.  (Emphasis added.)

      Since Defendants admit that they don't care whether these assets are preserved, they cannot

be harmed by an order allowing Plaintiffs to preserve or at least attempt to preserve these assets.

C. PLAINTIFF'S ARE LIKELY TO SUFFER IRREPARABLE HARM IF DEFENDANTS WAIST OR DESTROY THEIR ASSETS PENDING TRIAL.

A preliminary injunction is proper when it preserves the status quo and prevents an opposing party from taking harmful action. A business seeking a preliminary injunction must show the court: (i) the business has a clear, legal or equitable right; (ii) the business has a well-grounded fear of invasion of that right; and (iii) that the acts complained of are resulting in or will result in actual and substantial injury. *Hagemann v. Worth*, 56 Wn. App. 85, 87, 782 P.2d 1072, 1073 (Div. III 1989) (Hyperlink). A business has a clear legal or equitable right to an injunction when the business can demonstrate a likelihood of success on the merits. See *Tyler Pipe Indus. V. Dep't. of Revenue*, 96 Wn.2d 785, 793, 638 P.2d 1213 (1982) (Hyperlink). In other words, if the business can show the court that it will likely prevail in the dispute at trial, the business may successfully show that it has a clear legal and equitable right for the purpose of obtaining an injunction. *Id*.

One of the properties involved in this litigation is 9999 NE Worden Hill Road, Dundee, OR 97115. Though Tracey has insisted that he has not received rental income from this property which would be distributed to Plaintiff's because the property is unrentable. Plaintiffs have learned that the property has, indeed, been rented and is being rented now. Exhibit 9A to the Affidavit of David Law (Exhibit 1AAA) (Hyperlink) proves the Tracey lied about this property and that, in fact, it has been rented for over two (2) years. Moreover, Plaintiffs have also learned, through conversations with the tenant and through physical inspection, that since this litigation has been pending, Tracey hired a company to go into the property at 18901 Hilltop Road, Lake Oswego, OR 97034, and rip out the vegetation, including small trees, shrubs, buses and flowers severely damaging the

landscaping around this property.  It has been reported that at least three (3) trucks worth of material was removed and not replaced.  See Exhibit 11C, Affidavit of Ronald Stendahl ([Hyperlink](#)) and Affidavit of David Law (Exhibit 1AAA), p. 25 ([Hyperlink](#)).

On January 12, 2016 I went to 18901 Hilltop Road and notice that all of the plants and brush had been removed; there were hole where they were located.  Cynthia Morris told me that Mr. Baron had some of his workers come and take them out a few weeks earlier.

Aside from the esthetic damage which has been done, Plaintiffs are concerned with the erosion and earth movement which could result.  Once erosion or earth movement has begun, it can be nearly impossible to completely return the soil to a safe and stable condition.  Further, Plaintiffs have learned that the tenant (Cynthia Morris) at one property in particular is paying on $1,000.00 per month for rent in a property for which the fair market value of rent is more than double that amount.  The discount in rent is due to "in kind" services (bankruptcy information) which the tenant performs for Tracey which are not reported to Plaintiffs.  Moreover, since real estate is unique in the eyes of the law, there is an irreparable element to this problem.

Undoubtedly, Defendant's will argue that since we contend that this is a contract case and not a real estate case, we should not be able to dictate how the real estate is treated.  We do not wish to dictate how a particular parcel of real estate is treated.  We do not wish to see this asset, which happens to be a parcel of real estate, wasted.  In other words, our interest in preserving this asset does not stem from the fact that it is real estate.  Rather, it stems from the fact that it is an asset.  We would be just as concerned if the asset where personal property and not real property.

Plaintiffs do not know why Tracey damaged this property.  Nor do they know whether it will

happen again.  They do know that Tracey considered, at one time, salvaging building materials from

the home rather than renting it out because he was considering demolishing the home in order to

make it feasible to subdivide the property into four lots instead of one.  That would be disastrous as

the home is livable and should remain that way until final development plans are approved.

Plaintiffs also know that his actions are consistent with the threats Tracey has made.  If he has no

plans to lay waste to or destroy other assets then he should not object to an order maintaining the

status quo.

D.  PLAINTIFF'S ARE LIKELY TO SUFFER IRREPARABLE HARM IF DEFENDANTS
CONTINUE TO HIDE RENTS PENDING TRIAL.

     The contracts in question provide that a portion of all rents shall be paid to Plaintiffs.  Said

contracts also give Plaintiffs an assignment of all rents in the event of default by Defendants.

Plaintiffs have not received most of such rents due to false and incomplete reporting by Tracey.

One tenant, Ronald Stendahl, states that he is aware of over $45,000.00 in rents being paid under the

table on the property he is renting.  He says that Tracey insisted that all payment be made in cash

without any receipts and that there be no written rental agreement.  See Exhibit 11C Affidavit of

Ronald Stendahl, attached to the Affidavit of David Law (Exhibit 1AAA) (Hyperlink).  Plaintiffs

are learning that some of the tenants are displeased with the way Tracey has treated them and may

not remain in as tenants.  Mr. Ronald Stendahl is one such tenant.  The tone of his Affidavit displays

obvious displeasure with Tracey.

> I have learned over the two years living here and dealing with Mr. Barron that he
> does not keep his promises, I have lost all trust and belief in him and he is not a
> person that can be trusted, he uses others misfortunes for his benefit and I contribute
> much of this to the lack of values and principles due to his addictive behavior

problems with drugs and alcohol dependency.  Over the course of time I have witnessed him being highly manipulative, racist, and willing to take advantage of any person, situation or anything for financial gain and he will use a method of blackmail that will benefit his Narcissistic Personality Disorder.

Exhibit 11C Affidavit of Ronald Stendahl p. 4, attached to the Affidavit of David Law (Exhibit 1AAA).  (Hyperlink)

Once these revenues are lost, they can never be regained.  An old tenant can be replaced with a new tenant but the weeks or months during which the property lies empty while a new tenant is found are weeks or months of revenues that are not recaptured from the new tenant.  The new tenant pays only for his/her own period of occupancy and not for the period of vacancy.

Plaintiffs sent a letter to each property for which they have an assignment of rents informing the occupant of the assignment but, no sooner did the letters go out, Plaintiffs began learning that Tracey was threatening the tenants with eviction if they honored the assignment.  See Exhibit 2E to the Affidavit of David Law (Exhibit 1AAA) (Hyperlink).  Obviously, Plaintiffs did not want the tenants evicted so they backed down.

This is not just a question of monetary damages.  It is a question of preserving the contractual basis for those damages.  If the rents are not brought in, there are not damages for not paying Plaintiffs their portion of such rents.  The claim for damages can only exist if the tenants remain in the properties.

The court is asked to make an order on this subject which includes assurances that the tenants will not be evicted due to retaliatory efforts of Tracey.  Plaintiffs have no objection to having these rents paid into court.  By make such an order, the Court will preserve the status quo in keeping the tenants in the property and avoid irreparable harm that would come through lost revenue.

E.  PLAINTIFF'S ARE LIKELY TO SUFFER IRREPARABLE HARM IF THE ENGINEERING WORK OF 3J CONSULTING IS NOT MADE AVAILABLE TO PLAINTIFFS IN ORDER TO COMPLETE THE PROJECT.

By far and away the most valuable project that the parties undertook was the development of what they refer to as the "18901 Venture" which refers to 18901 Hill Top Road.  This was a joint venture by the parties and not simply a loan.  See Exhibit 3A, Joint Venture Agreement with  Notes (Hyperlink) and Exhibit 8B Violations of 18901 Venture (Hyperlink), both exhibits to the Affidavit of David Law (Exhibit 1AAA).  Said Joint Venture Agreement contemplated that the Hill Top Road property would be subdivided and sold.  To this end Tracey employed the engineering firm of 3J Consulting to draw plans, obtain permits and perform other engineering projects.  The contract with 3J Consulting is in the sole name of Tracey Baron personally and not in the name of the other parties to the Joint Venture or on behalf of the Joint Venture.  Approximately $100,000.00 has been paid to 3J Consulting and Ken Sandblast for planning and engineering work associated with this Joint Venture.  The project is in a very difficult spot because of the deadline for approval which is April 7, 2016.  After that date it is expected that the City of Lake Oswego require that the project be started over with a new application and new or updated survey's and engineering work.  3J Consulting needs addition funds in order to complete the project and Plaintiffs are willing to front this money in order complete the project, however, Tracey refuses to allow Plaintiffs access to the work performed by 3J Consulting.  Moreover, 3J Consulting refuses to proceed without Tracey's authorization.  Hence, this Court is asked order Tracey's authorization.  Plaintiffs consent to a restriction against their alienating the property pending trial.  We simply want to preserve the asset.

Plaintiffs acknowledge that if this order is not granted, the loss is monetary.  They also admit

that they can hire a different engineer and do all of the work themselves.  The irreparable aspect of this problem relates to the financial viability of the project.  Trying to go back and repeat the engineering work is likely to destroy the financial viability of the whole project.

The general rule is that one pursuing a money action is generally not entitled to a preliminary injunction because an adequate remedy at law exists.  A well recognized exception to this rule, however, is when movant's cause of action is directed to a specific fund which is "the subject of the action."  See *Ma v. Lien*, 198 A.D.2d 186, 604 N.Y.S.2d 84 (1993) (Hyperlink).  A myriad of cases hold a monetary damages claim directed at a specific fund is viable as an irreparable injury worthy of an injunction because the property, not the value of the property, is the true subject of the action. *Societe Anonyme v. Pierre A. Feller*, 112 A.D.2d 837, 492 N.Y.S.2d 756 (1985) (Hyperlink) held that in an action disputing the ownership of shares of a cooperative apartment, plaintiff was entitled to *pendente lite* injunctive relief since irreparable injury may arise if the defendant was not enjoined from transferring the cooperative's shares pending final resolution of the dispute.  In *Rolnick v. Rolnick*, 230 N.Y.S.2d 789 (1962), an action to impose a constructive trust upon the stock of defendant corporations, the Court ruled that a disposition of the stock shares would render any judgment ineffectual, and ruled that an injunction maintaining the status quo would not unduly burden the defendant, yet the denial of such relief could do irreparable harm and cause substantial prejudice to movant.  In *Brennan v. Barnes*, 232 N.Y.S. 112 (1928) the Court granted temporary restraining order precluding defendants from transferring the subject stock shares, despite sharp factual differences in the parties' respective affidavits, so to maintain status quo.  *Bronx County Trust v. O'Connor*, 220 A.D. 340, 221 N.Y.S. 414 (1927) held, in a complaint seeking to impose a

Preliminary Injunction Page 19

trust upon a sum generated by the sale of certain shares of a Tobacco Company, premised upon procurement of the shares through fraud and undue influence, the court reversed an order denying a motion to continue the *pendente lite* relief, restraining the defendants from disposing of such proceeds of sale.

<u>F.  THE EQUITIES BALANCE IN FAVOR OF PLAINTIFFS BECAUSE DEFENDANTS ARE NOT HARMED BY MAINTAINING THE STATUS QUO AND IT WOULD BE A TRAVESTY TO PERMIT DEFENDANTS TO WAIST, DESTROY OR THROW AWAY THESE ASSETS.</u>

The equities balance clearly in favor of granting this motion.  Consider each of the four (4) requests from an equitable point of view.

1.  Order requiring court approval for the sale or transfer of assets.

2.  Order against waist

3.  Order for rents to be paid into court

4.  Order to avoid waist of 3J Consulting work

These orders are not one-sided.  Each of these orders is designed to preserve assets.  This helps whomever prevails in this matter, even Tracey.  Defendants are not harmed by these orders, they are helped.  They help whomever prevails in this matter, even Tracey (should he prevail).  What they do is prevent Tracey from destroying assets in angry retaliation for having been found out. Equity does not support angry retaliation.  Equity does support these orders preserving the *status quo*.  See *United States v. Original Knights of Ku Klux Klan*, 250 F.Supp. 330 (E.D. La. 1965) (Hyperlink) where an injunction issued to stop economic retaliation against african-americans.

<u>G.   THE  PUBLIC  WILL  BENEFIT  FROM  ALLOWING  PLAINTIFFS  TO  AVOID  THE FAILURES THEY WISH TO AVOID THROUGH THIS MOTION.</u>

Plaintiffs are private money lenders, not public lenders.  They have brought this action for personal reasons.  That said, as a general rule, the public is not well served by properties that are foreclosed upon or business developments that fail.  So, in a broad sense, it is in the public interest to allow Plaintiffs to prevent these failures.  Promoting the public's interest in commerce has been held to be a legitimate benefit for purposes of preliminary injunctions.  The obvious example of this is found preliminary injunctions in merger and antitrust cases.  See *United States v. Siemens Corp.*, 621 F.2d 499 (2d Cir. 1980) (Hyperlink); *cf. FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981) (Hyperlink), *United States v. Ingersoll-Rand*, 218 F.Supp. 530 (W.D. Pa. 1963) (Hyperlink); *United States v. Pennzoil*, 252 F.Supp. 962 (W.D. Pa. 1965) (Hyperlink).

VI.

**CONCLUSION**

For the reason stated, this motion should be granted.

**A HEARING IS REQUESTED.**

Dated:  March 19, 2016

Respectfully Submitted,

Law Office of Steven W. Shaw

 */s/ Steven W. Shaw*
Post Office Box 54840
Provo, Utah 84605
Tel 702-292-1624
Email steve@shawlaw.biz

## CERTIFICATE OF SERVICE

I hereby certify that on this date, March 19, 2016, I caused a true and correct copy of the foregoing instrument to be efiled with the Court which in turn served a copy thereof on all counsel of record.

*/s/ Steven W. Shaw*

**EXHIBIT INDEX**


**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF PRELIMINARY INJUNCTION**


Exhibit 1AAA:      Affidavit of David Law

Exhibit 1AA:       Summary Page and "I Have to Ask Myself Why" Letter

Exhibit 1A:        Summary Page and Description of Exhibits B,C,D,E

Exhibit 1B:        Loan Summary Page - Estimates Due Before Profit
                   Sharing

Exhibit 1C:        Worksheet for DJ Property Solutions and Law IRA's

Exhibit 1D:        Worksheet for Deem Realty Funding and Deem IRA

Exhibit 1E:        Rent Interest Calculation

Exhibit 2A:        Promissory Notes - sample with notes

Exhibit 2B:        Supplemental Loan Agreement - sample with notes

Exhibit 2C:        Assignment of Rents - sample with notes

Exhibit 2D:        All Contract Packages in house number sequence - 575
                   pages

Exhibit 2E:        Letters to tenants about Assignment of Rents

Exhibit 3A:        "18901 Venture" - 18901 Hilltop Rd.

Exhibit 3B:        "Rental Venture Feb 2014" - Seven Rental Properties

Exhibit 4A:        Tracey deliberately letting properties go to harm Law and
                   Deem

Exhibit 6A:        CPA Michael J Hadzipanajotis Profitability and Ability
                   to Pay

Exhibit 6B:        Record of Payments to D Law and Entities

Exhibit 6C:        Record of Payments to D Deem and Entities

Exhibit 6D:        RenX and TLH Working Cash Flow Projection Ability to Pay

Exhibit 7A:        Email and text messages and spreadsheets about profit on Oxbow

Exhibit 7B:        Email messages with Trust Deed, Prom Note and SLA

Exhibit 7C:        Attempting to settle and then walking away from profit share

Exhibit 7D:        Legal Communications with Jeff Breglio our local attorney

Exhibit 7E:        Flavor of Communications Changes June - October

Exhibit 8A:        Construction Lien - Threat to Illegally Foreclose

Exhibit 8B:        Violations of the 18901 Venture

Exhibit 8C:        Statutory Bargain and Sale Deed

Exhibit 8D:        Baron Refuses to Allow Civil Engineer to Use Docs

Exhibit 8E:        Baron Lease for 18901 Hilltop in Default

Exhibit 9A:        Deception and Fraud Regarding Income Not Reported

Exhibit 10A:        Threats, Bullying and Intimidation - Blackmail

Exhibit 11A:        Jeffery A. Long Esq. attorney and previous LLC partner

Exhibit 11B:        Michael J. Hadzipanajotis, CPA statement

Exhibit 11C:        Ronald Stendahl, handyman and tenant at 9999 Dundee

Exhibit 11D:        Richard and Lea Lofton, previous LLC partner

Exhibit 12:        Email of October 17, 2015, from Tracey Baron to David Law

Exhibit 13:        Email from Tracey Baron to David Law, Darrell Deem, and Janine Law, January 16, 2016

Exhibit 14:        Proposed Order of Preliminary Injunction