UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DARRELL L. DEEM, et. al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>TRACEY BARON, et. al.,<br><br>　　　　　Defendants. | **ORDER**<br><br>2:15-CV-00755-DS<br><br>District Judge David Sam |

Defendants have filed a Motion to Recuse, requesting that Judge Sam recuse himself in this action because of an appearance of bias. Defendants allege that he should be recused because "his serial actions/rulings in this case demonstrate that he has a personal bias towards the defendants and a frustration with the defendants' attempts to assert fully legal and authorized defenses." ECF No. 164 at 1.

## I.  Legal Standard

Defendants base their motion to recuse on 28 USC 445(a) and (b)(1) and 28 USC 144:

### § 144 Bias or prejudice of judge

　Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

### § 455  Disqualification of justice, judge, or magistrate judge

　(a)  Any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

>   (b)  He shall also disqualify himself in the following circumstances:
>
>>   (1)  Where he has a personal bias or prejudice concerning a party, . . .

Under § 144, if a party files a *timely and sufficient* affidavit the "judge shall proceed no further," but another judge shall be assigned. Determining legal sufficiency is a question of law based on "whether the affidavit sets out facts and reasons for the party's belief that the judge has a personal bias and prejudice against the party or in favor of the adverse party." *Parrish v. Board of Commissioners of Alabama State Bar,* 524 F.2d 98, 100 (5th Cir. 1975). The facts and reasons in the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States,* 255 U.S. 22, 33 (1921). The Third Circuit has identified a three-part test in determining whether there is bias:

>   In an affidavit of bias, the affiant has the burden of making a three-fold showing:
>
>   1.  The facts must be material and stated with particularity;
>
>   2.  The facts must be such that, if true they would convince a reasonable man that a bias exits.
>
>   3.  The facts must show that bias is personal, as opposed to judicial, in nature.

*United States v. Thompson,* 483 F.2d 527, 528 (1973).

Under § 455, the judge "shall disqualify himself" if his impartiality could be reasonably questioned. The U.S. Supreme Court has held in *Litekey v. United States,* 510 U.S. 540, 555 (1994), that judicial rulings alone "almost never" constitute bias, and that judges may form opinions during litigation and express those opinions without being subject to recusal. A judge's role is to form opinions during the course of litigation and to express those opinions.

>   Impartiality is not gullibility.  Disinterestedness does not mean child-like innocence.  If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.

*In re J. P. Linahan, Inc.,* 138 F.2d 650, 654 (CA2 1943).  In *Litekey*, the U.S. Supreme Court states that generally, for a bias or partiality motion, the judge's opinion must derive from an extrajudicial source.  The rare exception to this would be when the opinion shows such a high degree of favoritism or antagonism that it makes fair judgment impossible:

> It is enough for present purposes to say the following: First, *judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.* See *United States v. Grinnell Corp*., 384 U.S., at 583. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, *opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion* unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, *judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.* They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." Id., at 28 (internal quotation marks omitted). *Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration "even a stern and short-tempered judge's ordinary efforts at courtroom administration" remain immune.*

*Liteky v. United States*, 510 U.S. 540, at pp. 555-56 (Emphasis added).

## II. Analysis

The defendants clearly do not argue in their motion or in their reply that the judge's alleged bias derives from an extrajudicial source, nor do they argue that the bias is personal, as

opposed to judicial, in nature. Therefore, under the three-part test articulated in *Berger,* the defendants' affidavit is not sufficient under Section 144.  Therefore the court will consider the defendants' allegations under Section 455. Defendants argue that the judge's rulings, actions and statements display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* This is a high standard to meet.  The U.S. Supreme Court stated in *Litekey* that "only in the rarest circumstances [can judicial opinions] evidence the degree of favoritism or antagonism required when no extrajudicial source is involved." *Id.*  The court will now consider each of the defendants' allegations to determine whether this is one of those "rarest circumstances."

**A. The court's ruling regarding mediation and arbitration**

The defendants argue that the court's decision to "ignore a mandatory mediation/arbitration provision based on [its] belief that mediation and/or arbitration is likely to be futile" was incorrect and done without authority, and that it indicates bias.  Defendants misrepresent the court's actions in this regard. The court did not "ignore" the provision.  The court fully described its actions and the justification for them in its denial of Defendants' Motion to set aside the Order Lifting the Stay:

> Although mediation has not been completed and non-binding arbitration has not even been attempted, the court agrees that Plaintiffs have "exhausted the process, and have completed all that they could reasonably be expected to do in this regard." Dkt. No. 64, at 3. After nearly a year of trying to accomplish mediation and arbitration, the parties finally scheduled mediation with Judge Newsome, an experienced mediator. Prior to the scheduled mediation, Judge Newsome emailed the parties, stating that in his personal opinion, "the parties in this case are at a hopeless impasse," and that "It would not be fair for me to accept money to go forward with a mediation that I think has absolutely no chance of being fruitful." Dkt. No. 44, Exhibit C. While no attempt has been made to conduct non-binding arbitration, this court has no reason to believe that the parties would be any more successful at that than they have been with the mediation. Therefore the court holds that the stay was properly lifted and will remain lifted.

ECF No. 68 at 2.  There is no indication of bias or prejudice here.  In fact, Judge Newsome's comments are an example of the frustration that a number of judges and attorneys, not just Judge Sam, have felt in dealing with this case.

**B. The court's rulings regarding the applicability of the bankruptcy stay**

Defendant argues that although there are a number of properties in the new Oregon bankruptcy case, "this Court has decided that the bankruptcy stay does not apply with respect to those properties and refused to rescind the preliminary injunction which purports to allow the Plaintiffs to interfere with those properties." ECF No. 164 at 4. This is simply not true.  Here is what the court actually said:

> While the court reaffirms its prior stance that this action does not affect properties that are currently in Chapter 11 Bankruptcies, it appears that only one subject property is still in bankruptcy. The Oregon Bankruptcy Court has granted relief from the automatic stay as to the Hill Top Project, so that Plaintiffs can continue this litigation. And as for the other properties, Plaintiffs note that all bankruptcies except one have been dismissed due to the misrepresentations and misreporting of Tracey Baron. The Crimson Bankruptcy, the sole remaining bankruptcy, only held one property of interest to Plaintiffs, so Plaintiffs have chosen to ignore it. If Defendants disagree with this assessment, they are ordered to provide this court with proof that specific properties are still in the Chapter Eleven Bankruptcies and subject to the stay, and thus not subject to this order.

ECF No. 129 at 4.  Defendants do not even attempt to explain how this decision evidences a deep-seated favoritism or antagonism that would make fair judgment impossible and the court finds that it does not do so.  The court gave the defendants the opportunity to provide proof that specific properties of concern are in the bankruptcies and subject to the stay, which the defendants did not do.

**C. The court's decision to grant the preliminary injunction**

Defendants summarily state that the court "did not address the respective harms to be suffered by the parties and did not discuss whether a bond—which is required—should be

ordered." ECF No. 164 at 5.  Defendants cite no authority for their statement and provide no argument as to how granting the preliminary injunction evidences bias and prejudice. The court finds that it does not.

**D. The court's various rulings and actions that allegedly suggest bias**

Defendants list a number of decisions, statements and opinions that they argue suggest bias in favor of Plaintiffs and against Defendants. Every one of them arises out of this judicial proceeding and thus, may only be used as a basis for recusal *if* they demonstrate a deep-seated favoritism or antagonism that would make fair judgment impossible.  The court finds that none of the rulings and actions rises to that level:

1.  At a telephone conference the court expressed anger and frustration with some of the Defendants' tactics.  The *Liteky* case specifically states, "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger . . . ." *Liteky*, 510 U.S. at 555. The court's sternness and expression of frustration are expressly not evidence of bias or prejudice.

2.  The court ruled "without legal precedent that it could ignore the mandatory mediation/arbitration provisions of the parties' contracts and allow this litigation to proceed, and that the then pending Oregon bankruptcies did not stay this action." ECF No. 164 at 6.  This misconstrues the court's ruling and clearly does not provide evidence of bias or prejudice.  *See* Sections A and B above.

3.  The court participated in an improper single party ex parte contact/communication with Plaintiffs, and gave them ex parte advice as to how to proceed.  This allegation is based on an email from Plaintiffs to Defendants.  The email, in its entirety, said the following:

> Hi Brian: The court just called me and asked me to get you on the phone so we could talk. I called but there was no answer so the court talked to me for a minute about the Rule 26 Conference and my motion to take deposition. If we could just hold the Rule 26 conference then my motion to take deposition would be moot. Are you available some time this week or next for that conference? If not, the court said it would resolve the matter at the scheduled scheduling conference. So we don't need to call him back. Steve

ECF No. 167 at 12.  There is no indication in the email that the court gave Plaintiffs any improper advice.  Nor is there any suggestion of bias or prejudice. The court simply tried to initiate a conference call to clarify an issue, and when the defendants were unavailable, the court explained its reason for the call.

    4. Judge Sam "expressed frustration with what he deemed to have been the Defendants' 'delay tactics,' and ordered a very tight discovery period, granted Plaintiffs' every request with respect to provisions of the scheduling order, and denied all of the Defendants' requests." ECF No. 164 at 6. Once again, the U.S. Supreme Court's opinion in the The *Liteky* case is on point: "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger . . . ." *Liteky*, 510 U.S. at 555.  And again, there is no evidence whatsoever of such a high degree of favoritism or antagonism as to make fair judgment impossible. A reasonable person would find Defendant Tracy Baron's actions to be delay tactics, when he threatened to "tie this up until Darrell's dead" and to "tie this up for years and years fighting the process," and then over the course of the litigation filed 11 motions for extension of time (more than half of which were granted). In attempting to move this case forward, the court has been firm with Defendants and on occasion has expressed frustration, but he has in no way demonstrated any deep-seated favoritism or antagonism.

    5. The court granted Plaintiff's motion for preliminary injunction without weighing the respective harms to the parties and without discussing the imposition of a bond.  The court has

already addressed this issue. *See* subsection C (above) and ECF No. 129 (Order granting preliminary injunction). Defendants did not even raise the issue of a bond in their pleadings on the motion for preliminary injunction. ECF No. 114. Again, there is no evidence of a high degree of favoritism.

6. The court used the bankruptcy judge's criticisms of Defendants "as a justification for essentially treating the bankruptcy case as if it had not been filed and had no effect upon this action." ECF No. 164 at 7. This is a blatant misrepresentation of what the court actually did in its order. The court in its order reiterated the undisputed truth that "the Bankruptcy stay applies automatically to parties to this action who have filed bankruptcy," and then held, yet again, that "the stay does not apply to non-debtors, and this action would 'therefore continue as to the non-debtors, unless the bankruptcy court orders otherwise.'" ECF 141 at 1-2. The court noted that Defendants had admitted in their own pleadings that Tracey Baron and other defendants are not in bankruptcy, and that not all properties relating to this suit are in Bankruptcy.

The bankruptcy judge's criticisms of Defendants provide insight in determining whether this court has shown bias or prejudice. The judge in the bankruptcy case expressed great concern and frustration with the Bankruptcy Schedules and noted that they were wrong and would all need to be refiled. Even the Defendants' own bankruptcy attorneys expressed frustration with him. Judge Sam's occasional frustration with Defendants, rather than being evidence of bias or prejudice, is a typical and understandable reaction from many who have dealt with this case, including the bankruptcy judge and attorneys and Judge Newsome, the mediation judge.

7. Judge Sam's granting of monetary sanctions against the Defendants showed his clear frustration and "desire to punish" the Defendants because their arguments were not entirely

meritless. Looking at the history of the case, the granting of monetary sanctions against Defendants was not evidence of a high degree of favoritism. The court granted monetary sanctions because of Defendants' history of delay and their refusal to appear at deposition.

8. The court's characterization of Defendants' actions in an "angry frustrated way," as merely "delay tactics," shows a possible bias against Defendants and their trial strategy. This has been addressed repeatedly in this order, and based on *Liteky* there is no evidence of deep-seated favoritism or antagonism.

The court agrees wholeheartedly with Defendants that a judge should disqualify himself where his impartiality might reasonably be questioned. Nothing is more damaging to the public confidence in the legal system than the appearance of bias or prejudice on the part of the judge. However, in this case, nothing in Judge Sam's actions or rulings reveals bias or prejudice. There has certainly not been such a high degree of favoritism or antagonism as to make fair judgment impossible.

### III. Conclusion

For the above reasons, the court hereby DENIES Defendants' Motion to Recuse. SO ORDERED.

DATED this 10th day of May, 2018.

BY THE COURT:

DAVID SAM
United States District Judge